2026 IL App (1st) 251500-U

FIRST DISTRICT,
SIXTH DIVISION
February 13, 2026

No. 1-25-1500B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 23CR1102201 23CR1102301 |
| STEVEN GOODMAN, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Alfredo Maldonado, Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:* Circuit court did not err in denying pretrial release to defendant charged with first degree murder and solicitation.

¶ 2    In 2023, defendant Steven Goodman allegedly broke into his ex-girlfriend Kenovia Robertson's apartment with the intent to kill her. Robertson, who had an order of protection against Goodman, spent the night at a neighbor's due to her fear of Goodman. Robertson's niece Deshawnay Yoakum was not so fortunate, and was fatally shot. After failing to kill Robertson,

Goodman then allegedly solicited someone else to kill her. Goodman was charged with first degree murder and solicitation of murder and was denied bail.

¶ 3     After the enactment of the Pretrial Fairness Act (Act) (725 ILCS 5/110-1 *et seq.* (West 2024)), Goodman requested pretrial release. The State responded with a verified petition to detain, which the court granted. Goodman seeks reversal of this decision, arguing the proof is not evident nor the presumption great that he committed a detainable offense under either of the cases he was charged under, 23CR1102201 (murder) and 23CR1102301 (solicitation of murder), and that any threat he poses to the safety of others could be mitigated by conditions of release. We disagree and, thus, affirm.

¶ 4                                I. BACKGROUND

¶ 5     Goodman was arrested on September 14, 2023. He was charged and indicted on 12 counts of first degree murder and two counts of home invasion in case 23CR1102201 and two counts of solicitation of murder in case 23CR1102301. Following a bond hearing on September 17, 2023, Goodman was denied pretrial release and held without bail.

¶ 6     On March 5, 2024, Goodman requested a pretrial detention hearing under the Act. The same day, the State filed a petition for pretrial detention, alleging Goodman committed an eligible offense of first degree murder, he poses a real and present threat to the safety of any person or persons in the community, and that no condition or combination of conditions could mitigate that threat. See 725 ILCS 5/110-6.1(a)(4) (West 2024). A pretrial detention hearing was held the same day, at which the State proffered the following evidence.

¶ 7     Goodman and Robertson, who have four children, ended their relationship a few months before March 2023. On February 8, 2023, Robertson filed for an order of protection against Goodman after he threatened her. For fear that Goodman would break into her apartment, she

went to stay with her cousin. Robertson's fear was well-founded, since a neighbor saw Goodman leaving her apartment with two garbage bags on February 18, 2023, and surveillance video captured Goodman inside of the apartment building again on February 22, 2023.

¶ 8        On February 27, 2023, Robertson, still afraid to return home, decided to stay with a neighbor residing in the same apartment building. The next day, Robertson's niece Deshawnay Yoakum asked if she could stay at Robertson's apartment. Robertson told Yoakum she could stay there even though Robertson was not because of issues with Goodman. Robertson tried to contact Yoakum later that day to check on her but could not reach her. Robertson heard faint gunshots around 10:30 p.m. but did not call the police because she did not see anyone outside.

¶ 9        On March 1, 2023, Robertson went to her apartment to check on Yoakum. She found Yoakum lying behind the apartment door with a gunshot wound to the head. First responders transported Yoakum to the hospital in critical condition, but she eventually died from her injuries. A 9mm cartridge casing was recovered on the bedroom floor near the bed. GPS data from Goodman's work van showed it was only one block from Robertson's apartment "beginning at" 3:28 p.m. on the day of the shooting.

¶ 10        On March 27, 2023, Goodman was pulled over for speeding and was taken into custody under an outstanding warrant in the domestic case. Officers recovered a 9mm handgun underneath the driver's seat of Goodman's car. Goodman did not have a valid Firearm Owners Identification card or concealed carry license. Initial ballistics testing revealed a "high confidence correlation" between Goodman's handgun and the shell casing found in the bedroom.

¶ 11        At the end of July 2023, Goodman contacted a witness to help him secure a new gun. Goodman told the witness that Robertson was becoming a "nuisance and that he needed to get rid of her." Goodman offered him $7,000, but the witness agreed to do it for $1,000 since

Goodman was family. Goodman contacted the witness again to talk about "the situation," *i.e.*, killing Robertson. Goodman kept contacting the witness, but the witness stopped engaging and called the police instead.

¶ 12      At the time of the detention hearing, Goodman had two pending criminal cases: a Class 3 possession of firearm and misdemeanor criminal trespass to residence.

¶ 13      Goodman's counsel challenged the State's proffer, arguing there was no evidence of the accuracy of the GPS, who was driving the van, whether Goodman's route would ordinarily take him near Robertson's apartment, or whether the ballistics evidence is accredited or reliable. As to solicitation, Goodman argued the witness's account was "completely inaccurate." Moreover, because Goodman did not flee or commit any crimes in the six months between the murder and his arrest, any threat he poses could be mitigated by conditions of release. The State responded that the proffered evidence, including the solicitation of Robertson's murder, shows the proof is evident and presumption great that Goodman killed Yoakum.

¶ 14      The circuit court denied Goodman pretrial release, finding the State showed by clear and convincing evidence the proof is evident or presumption great that Goodman committed an eligible offense of first degree murder and poses a threat to the safety of the community. Goodman allegedly killed Yoakum while intending to kill Robertson, tried to solicit Robertson's murder when that attempt failed, and was armed when arrested. Further, pretrial services, electronic monitoring, or any condition less restrictive than incarceration would not prevent Goodman from committing or planning another crime.

¶ 15      On June 30, 2025, Goodman filed a *pro se* motion for relief under Supreme Court Rule 604(h) (eff. Apr. 15, 2024), challenging various details of the State's proffer. For example, Goodman maintained his and Robertson's relationship ended less than a month prior to the

incident rather than months prior, Robertson did not fear him because she stayed at her apartment multiple times before the murder, and GPS evidence did not confirm his vehicle was one block from the apartment the day of the shooting. He also argued he had only reached out to the witness in the solicitation case to ask about his family's well-being, not to hire him for murder. Despite these arguments, the circuit court reaffirmed its decision to deny Goodman pretrial release and continued his detention. Goodman appeals.

¶ 16                                   II. ANALYSIS

¶ 17        For the State to obtain an initial detention order, the Act requires three showings by "clear and convincing" evidence: (1) that the proof is evident or the presumption great that a defendant has committed an eligible offense (725 ILCS 5/110-6.1(e)(1) (West 2024)); (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)); and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2024)). The "clear and convincing" standard of proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *People v. Clay*, 361 Ill. App. 3d 310, 322 (2005). Where, as here, the State proceeds by proffer, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 18        Goodman argues the State failed to prove by clear and convincing evidence that the proof is evident or presumption great that he committed first degree murder. Specifically, where the State did not proffer any surveillance videos showing him at or near Robertson's apartment on the day of the murder, subsequent ballistics testing found the link between Goodman's gun and

the recovered shell casing was "inconclusive," and Robertson heard gunshots around 10:30 p.m., seven hours after GPS placed Goodman's van within a block of the apartment.

¶ 19    Goodman's arguments are more appropriately directed at whether the State can prove him guilty beyond a reasonable doubt, which is not the standard for pretrial detention. The proffered evidence showed Robertson was so scared of Goodman that she filed for an order of protection and vacated her apartment for fear that he would break in, as he did twice leading up to the murder. Goodman's work van was just one block away from Robertson's apartment, "beginning at" 3:28 p.m. on the day of the murder. Moreover, whether ballistics testing conclusively linked Goodman's handgun to the shell casing or not, they share the same caliber. Although perhaps not enough to prove him guilty beyond a reasonable doubt at this point, this evidence along with Goodman soliciting Robertson's murder mere months later is more than sufficient to show the proof is evident or presumption great that he killed Yoakum, thinking she was Robertson. See *People v. Dominguez*, 2025 IL App (2d) 240772-U, ¶ 29.

¶ 20    Goodman also argues the evidence was not clear and convincing as to the solicitation of murder count, since the State's evidence was rebutted by Goodman's contention that he had only contacted the witness to ask about his family. We disagree. According to the witness, Goodman said Robertson was a "nuisance and that he needed to get rid of her," and offered the witness $7,000 to do so. Considering Robertson's significant fear of Goodman, his prior break-ins, and Yoakum's brutal murder, the proof is evident and presumption great that Goodman solicited someone else to kill Robertson after his own attempt failed.

¶ 21    Furthermore, the court correctly determined that no conditions of release would mitigate the risk posed by Goodman. In determining which conditions of pretrial release, if any, would ensure the safety of any person or the community, a court should consider (1) the nature and

circumstances of the charged offense, (2) the weight of the incriminating evidence, (3) the defendant's history and characteristics, and (4) the seriousness of the threat defendant poses to any person, persons, or the community. 725 ILCS 5/110-5(a) (West 2024).

¶ 22　　　The nature and circumstances of this case are egregious. Goodman allegedly broke into Robertson's apartment, shot Yoakum in the head thinking she was Robertson, and left Yoakum for dead. She remained alone overnight before Robertson found her and had her taken to the hospital, where she died. Goodman then solicited someone else to kill Robertson. All of this shows a severe risk to the safety of others, especially Robertson, and the community. Less restrictive conditions proposed by Goodman such as home confinement, electronic monitoring, or a no contact order with Robertson and her family would not prevent Goodman from once again trying to kill Robertson or soliciting someone else to do it. In fact, Robertson had an order of protection against Goodman, but it proved ineffective. Based on the facts and circumstances presented, the court appropriately denied Goodman pretrial release.

¶ 23　　　　　　　　　　　　III. CONCLUSION

¶ 24　　　For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 25　　　Affirmed.